[Civ. No. 45921. First Dist., Div. Four. May 19, 1983.]

CALISTOGA CIVIC CLUB, Plaintiff and Appellant, v.
CITY OF CALISTOGA, Defendant and Respondent;
THE PEOPLE, Intervener and Respondent.

COUNSEL

Cecilia D. Lannon and Charlene K. Villani for Plaintiff and Appellant.

Guadagni, Gasper & Flax and Patrick McGrath for Defendant and Respondent.

George Deukmejian, Attorney General, and Joanne Condas, Deputy Attorney General, for Intervener and Respondent.

OPINION

**CALDECOTT, P. J.**—Plaintiff, Calistoga Civic Club appeals from an adverse judgment entered in favor of defendant-respondent City of Calistoga.

The subject matter of the present litigation is real property consisting of a lot and clubhouse located at the corner of Lincoln Avenue and Myrtle Street in the City of Calistoga. The lot was acquired by the club in 1916 for a sum of $750; the clubhouse was erected in 1924. Since the time of its completion, the clubhouse has also served as the home of the Calistoga Public Library. It is this dual function that is the source of the present controversy.

As the record indicates, the club was founded and incorporated as a nonprofit corporation in 1905. Its charter provided that its term of existence was for 50 years. While the corporate charter thus expired by operation of law in 1955, the club, unaware of its terminated corporate status, continued to operate as a de facto corporation until 1968 when it filed amended articles of incorporation to provide for perpetual existence.

The trial court found (and the record supports the proposition) that the maintenance of the library was one of the primary purposes of the club. An examination of the club's minutes reveals that its members considered the acquisition of a library for the community of Calistoga to be an important goal as early as 1914. In June of that year, the members discussed the possibility of obtaining funds for a library from the Carnegie Foundation. In 1919, the minutes report, the results of a roll call "indicated that the most important response was an expressed desire for a library and club building and 'How can I boost Calistoga.'" That same year, a library fund was opened with all of the proceeds from a special entertainment going into it.

Shortly after the construction of the library building, an indenture dated March 1, 1926,[1] was signed by the club's then president, Mitto Blodgett, and its secretary, describing the purpose of the building as being for the "use of the Calistoga Civic Club and also for . . . housing the Calistoga Free Public Library." The indenture also offered the use of the property free of rent or charge. During the 1930's, the activities of the club centered principally around raising money to pay off the mortgage on the building. To this end, a variety of events, including card parties and luncheons, were held. In addition, since the club's resources have always been minimal, the city has throughout the years contributed substantially to the library's maintenance, repair and operating expenses.

The physical premises of the library building consist basically of two rooms. Since the time of the building's construction the larger room has been used for the library and the smaller room for club functions. The larger room is equipped with built-in and free-standing bookshelves, while the smaller room contains only the latter, a layout which the trial court found "contemplated future expansion of the library." Above the main entrance to the building, in large letters, are the words "Calistoga Public Library," a designation which also appears over the separate club entrance on Myrtle Street.

Beginning in the 1930's and continuing to the present litigation the city expressed a repeated interest in acquiring the title to the club building. On several occasions the city offered to purchase the property, but the club refused. In 1951 and again in 1966, the club agreed only to lease the library to the city, the rent under the latter agreement being $50 per month.

In 1967, Conrad Weil, a former city attorney, prepared a resolution winding up the affairs of the club and authorizing the transfer of the library building and property to the city. Mr. Weil also prepared a deed to the same effect. Subsequently, his wife, Persona Weil, obtained the signatures of two members of the club's 1955 board of directors on the resolution and of two 1955 club officers on the deed. Mrs. Weil, a former club member herself, testified at trial that she had been motivated by a feeling of anger resulting from her belief that the 1966 lease was contrary to the original purpose of the club and was enriching the club's present members at public expense. She took her actions after failing in a direct attempt to convince the club's membership to transfer the property and after being informed by her husband that the club's charter had expired in 1955, leaving the 1955 directors and officers with legal power to convey the property. Mrs. Weil acknowledged that she had informed neither the remaining members of the 1955 club nor the current members of the 1967 club of her actions.

---

[1]Appellant's argument that the 1926 indenture was improperly admitted in evidence must be rejected on the basis that due to a lack of timely objection at trial this issue cannot be raised on appeal. (*In re Lynna B.* (1979) 92 Cal.App.3d 682, 703 [155 Cal.Rptr. 256].)

Contending that both the resolution and the deed transferring the property were invalid because they were signed by persons who had no authority to do so, and because those documents were executed without the requisite quorum of the board of directors and without notice to the members of the club, appellant brought an action on October 2, 1967, seeking the cancellation of the deed, the retransfer of the property, damages for fraud and attorney's fees. In its cross-complaint the city claimed inter alia that the title of the library property was subject to a trust for the use and the benefit of the city.

The trial below was conducted in two stages. In the first stage, held without a jury, the court determined that appellant was not a charitable corporation, but rather a nonprofit social corporation engaged in a variety of activities, including charitable ones. Prior to this phase, on a motion by appellant, the court dismissed the Attorney General as a party-defendant, but issued an order permitting him to intervene on the question of the plaintiff's status.[2] In the second stage of the trial, also held without a jury, the court ruled that the deed in question was invalid and restored legal title of the property to the club. The court predicated its holding on the fact that the resolution purporting to wind up the affairs of the club failed to comply with the requisite statutory requirements and also that it was made without notice to club members in violation of the basic precepts of due process and fair dealing. At the same time the court held that neither the proponents of the resolution nor the city were guilty of fraud, undue influence or abuse of confidential relationship. In accordance therewith, the trial court denied damages and attorney's fees to appellant. In passing upon the cross-complaint, the court found in part in favor of the city and ordered that the title of the club property be impressed with a charitable trust for library purposes. Simultaneously, the court appointed the city successor trustee to execute the trust and issued guidelines for the use of the property. Judgment for the city was entered on September 19, 1978.

### The Imposition of Charitable Trust

Appellant's first contention on appeal is that the trial court erred in impressing a charitable trust for library purposes upon the club's property. Appellant maintains that there was no factual or legal basis for the imposition of either a constructive or resulting trust.[3] More accurately, appellant insists that the imposition of a constructive trust was improper because no actual fraud was committed by the club and that the doctrine of resulting trust was also inapplicable

---

[2]The Attorney General's interest in the case arose because of the claim that the conveyance in question failed to comply with the requirements of Corporations Code section 9801, making the Attorney General a necessary party to the distribution of the assets of a charitable corporation on dissolution.

[3]Neither the findings of fact, the conclusions of law nor the judgment specifically mention "constructive trust" or "resulting trust," however, the evidence and the findings would support such a determination, particularly as there was no request for a finding on the subject.

because the intention of the club contributors embraced a large range of civic activities and was not limited to the maintenance of a library only. In the alternative, appellant claims that the city was estopped from demanding the imposition of a charitable trust due to its prior rental agreements with the club and that, at any rate, the invocation of trust was unnecessary because the club never denied the public the use of the library.

■ In addressing the first issue, we point out that the constructive trust is a species of an involuntary trust which is created by operation of law. (Civ. Code, § 2217.)[4] It is predicated upon section 2224, which provides that: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." The case law explains that in order to create a constructive trust as defined in section 2224, three conditions must be satisfied: the existence of a res (property or some interest in the property); the plaintiff's right to that res; and the defendant's acquisition of the res by some wrongful act. (*Kraus* v. *Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354, 373 [140 Cal.Rptr. 744]; *Cramer* v. *Biddison* (1968) 257 Cal.App.2d 720, 724 [65 Cal.Rptr. 624].) However, contrary to appellant's belief, the wrongful act giving rise to a constructive trust need not amount to fraud or intentional misrepresentation. All that must be shown is that the acquisition of the property was wrongful and that the keeping of the property by the defendant would constitute unjust enrichment. (*Estrada* v. *Garcia* (1955) 132 Cal.App.2d 545, 552 [282 P.2d 547]; see also *Edwards-Town, Inc.* v. *Dimin* (1970) 9 Cal.App.3d 87, 94 [87 Cal.Rptr. 726].)

■ In the case at bench both a wrongdoing on the part of appellant and unjust enrichment are present. The trial court stated in its notice of intended decision[5] that while appellant had not engaged in actual fraud in the acquisition of the property: "[T]here certainly have been misrepresentations to the community in general and to the many donors to Club's activities over the years (and particulary during the early years of raising money to build the building) where Club now seeks to hold title to the building free of the right of the general public to assert a beneficial interest therein for library purposes." Given the insignificant amount of money received by appellant in dues, concluded the court, it was only through the combined support of the city and community that the club was able to acquire and retain legal title to the library building.

The propositions set out above are amply supported by the record. At trial, testimonial evidence was introduced to the effect that the original purpose of the

---

[4]Unless otherwise indicated, all further references will be made to the Civil Code.

[5]The notice of intended decision may be used to explain and interpret the findings where, as in this case, there has not been a request for a specific finding on the subject of fraud or misrepresentation. (See *Morris* v. *Thogmartin* (1973) 29 Cal.App.3d 922, 930 [105 Cal.Rptr. 919].)

building was to provide a free home in perpetuity for the Calistoga Public Library. This testimonial evidence was corroborated by the 1926 indenture, signed by the club's president Mitto Blodgett and its secretary, describing the building as being for the "use of the Calistoga Civic Club and also for . . . housing the Calistoga Free Public Library." Moreover, the evidence buttresses the trial court's conclusion that public contributions rather than club funds accounted for the construction and maintenance of the library building. Thus, it was shown that the membership fees paid by the club members had been minimal throughout the years. The club had no more than 30 members even at its high point in the early 60's and that the membership fee never exceeded a yearly $3 per person. As a consequence, the club, as a necessity, had to rely on public and municipal support to sustain itself. The evidence presented at trial demonstrated indeed that the expenses of maintaining, repairing and improving the library building had been paid from public donations and substantial financial contributions by the city.

In sum, since there is sufficient evidence that the club misrepresented the purpose for which it solicited money from the general public and the city, and since, under the circumstances here present, the club would be unjustly enriched if it were allowed to retain both the legal and beneficial ownership to the building, the imposition of a constructive trust must be held fully justified.

As stated in 7 Witkin, Summary of California Law (8th ed.) Trusts, section 131, page 5487: "A constructive trust is a *remedy* used by a court of equity to compel a person who has property to which he is not justly entitled to transfer it to the person entitled thereto. The trust is passive, the only duty being to convey the property." Normally, the court would order the property conveyed to the person entitled thereto or grant the person an equitable lien on the property. As neither of these solutions would be practical, nor even possible in the present case, the trial court properly accomplished the desired result by the imposing of the charitable trust on the property.

Although the foregoing discussion is dispositive of appellant's principal contention, we briefly remark that the imposition of a charitable trust was warranted in this case also under the theory of a resulting trust.

A resulting trust is often called an "intention-enforcing" trust. (*Seabury v. Costello* (1962) 209 Cal.App.2d 640, 645 [26 Cal.Rptr. 248].) It arises by implication of law (§ 853)[6] to enforce the inferred intent of the parties to a transaction. (*Dabney v. Philleo* (1951) 38 Cal.2d 60, 68 [237 P.2d 648].) Like a constructive trust, the resulting trust is a creature of equity and need not be

---

[6]Section 853 provides that: "When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is *presumed* to result in favor of the person by or for whom such payment is made." (Italics added.)

evidenced by writing or even by an express declaration. (*Seabury* v. *Costello, supra,* at p. 645.)

As pointed out before, in the case at bench, the trial court found that a substantial portion of the funds to acquire and maintain the library was solicited from the general public under a representation, and with the concomitant expectation, that they would be used to provide a home for the library in perpetuity. This finding and the evidence supporting it is sufficient to support the imposition of trust also under the theory of a resulting trust.

Appellant's two additional contentions require only a short reply. The argument that due to the prior rental agreements the city is estopped from claiming that it had a beneficial interest in the library, must be dismissed for the reason that appellant failed to show the elements of estoppel. (*California Milling Corp.* v. *White* (1964) 229 Cal.App.2d 469, 479 [40 Cal.Rptr. 301]; *Johnson* v. *Johnson* (1960) 179 Cal.App.2d 326 [3 Cal.Rptr. 575].) Moreover, the evidence supports the trial court's conclusion that the leases in question constituted only a vehicle by which public money could be expended on property not owned by the city and that the city used this vehicle to contribute to the maintenance of the public library located in the club building.

Appellant's other assertion that the imposition of the trust was unnecessary in this case because the club at no time declined to provide a home for a public library, is unfounded. The essence of impressing a charitable trust upon the club's property for the purpose of a public library is that the city and the general public are free to use the library premises without charge and as a matter of a beneficial interest in the property. Quite obviously, the club takes issue with both of these premises, vigorously contending that the city and the public are entitled to no such beneficial interest and also that the city is duty bound to pay for the use of the library. In view of the legal position taken by the club the adjudication of this crucial issue carries great significance and cannot be labeled as a futile or unnecessary act.

### The Denial of Damages

Appellant's next major contention is that the trial court's ruling denying damages to the club was erroneous. This argument of appellant fails for two reasons.

First, appellant's damage claim is predicated upon the premise that the execution of the resolution and the deed was induced by fraud and undue influence. However, a review of the evidence amply demonstrates that appellant's contention rests upon conflicting evidence which conflict was decided by the trial court in favor of respondent.

Second, the denial of damages was proper on the additional ground that the loss claimed by the club was too speculative and uncertain. (*Griffith Co.* v. *San Diego Col. for Women* (1955) 45 Cal.2d 501 [289 P.2d 476, 47 A.L.R.2d 1349]; *Agnew* v. *Parks* (1959) 172 Cal.App.2d 756 [343 P.2d 118].) As appears above, the club was a nonprofit organization involved in civic activities. Concededly, a great portion of the clubhouse had been used for decades for the purposes of a public library, and not for commercial renting. Moreover, there is no evidence whatsoever that the club rented any part of its premises for commercial activities. Due to the lack of any past experience of commercial renting or other evidence shedding light on the commercial value of the property, the difficulty in ascertaining damages here would have been insurmountable indeed. (Cf. *Taylor* v. *Hopper* (1929) 207 Cal. 102 [276 P. 990]; *Ramsey* v. *Penry* (1942) 53 Cal.App.2d 773 [128 P.2d 399].)

### Attorney's Fees

Appellant finally argues that the trial court should have awarded attorney's fees on three distinct bases: (1) the defense to the action was unfounded and brought in bad faith; (2) the club acted as private attorney general; and (3) substantial benefits were conferred upon the persons represented (*Mandel* v. *Hodges* (1976) 54 Cal.App.3d 596 [127 Cal.Rptr. 244, 90 A.L.R.3d 728]). As appears below, none of these contentions have any merit.

Appellant's first charge must be rejected for the reason that the city's defense and cross-complaint were at least partly meritorious inasmuch as it succeeded in impressing a charitable trust upon the club's property. Since the city prevailed substantially in the action, it cannot be said that it maintained an unfounded action or defense in bad faith, in fact the trial court found there was no bad faith. Appellant's contention based upon doctrine of private attorney general must fail on the ground that its action did not confer significant benefit on the general public or a large class of persons (Code Civ. Proc., § 1021.5). Last, an award of attorney's fees under *Mandel* must be denied for the reason that the action at bench was brought by appellant in its individual capacity rather than as a representative action and that the disposition of the action failed to confer substantial benefits upon the persons represented.

The judgment is affirmed.

Rattigan, J., and Poché, J., concurred.