[No. A049626. First Dist., Div. Four. Nov. 20, 1990.]

PACIFIC LUMBER COMPANY, Petitioner, v.
THE SUPERIOR COURT OF HUMBOLDT COUNTY, Respondent;
ROBERT MARTEL, Real Party in Interest.

372

COUNSEL

Morrison & Foerster, David G. Robertson, Susan Bernhardt and Jon S. Tigar for Petitioner.

No appearance for Respondent.

Thomas C. Petersen for Real Party in Interest.

OPINION

**POCHÉ, J.**—Petitioner Pacific Lumber Company seeks a writ of mandate to require respondent court to expunge a lis pendens which has been filed against petitioner's real property in Humboldt County by real party in interest, Robert Martel. We agree that real party did not meet his burden of establishing that the action affects title to or right of possession of the real property and for that reason the lis pendens should have been expunged. (Code Civ. Proc., § 409.1.)

On March 26, 1990, Martel commenced this suit as a class action on behalf of the former shareholders of Pacific Lumber Company, a Maine corporation (hereinafter PL-Maine). The complaint described the nature of the action in part as follows: "(b) This action affects title to or right of possession of the real property owned by PACIFIC LUMBER in Humboldt County, California. This actions [*sic*] seeks rescission of the merger and restoration of ownership of PACIFIC LUMBER and its assets, including the land and timber located in Humboldt County, to its former shareholders, based in part, upon the failure of the named defendants to comply with the provisions of the Ninth and Tenth Articles of the Articles of Incorporation of THE PACIFIC LUMBER COMPANY, a Maine corporation, as well as the other acts of the defendants complained of herein, including acts of fraud."

In the complaint, real party alleges that through the fraud of numerous defendants (which include Charles E. Hurwitz, chairman of the board and majority stockholder of a corporation called MAXXAM and Ivan Boesky, Michael Milken, and Drexel-Burnham-Lambert) MAXXAM acquired title to all the shares of PL-Maine. MAXXAM transferred the shares to its wholly owned subsidiary corporation, Pacific Lumber, a Delaware corporation (hereinafter PL-Delaware). PL-Delaware then merged with PL-Maine. Thus, it is alleged that through the fraudulent acts of the MAXXAM defendants, that they were able to place title to the disputed real property into the hands of PL-Delaware, a wholly owned MAXXAM subsidiary.

On the same day the complaint was filed Martel filed a lis pendens against the 190,000 acres of land owned by the Pacific Lumber in Humboldt County.

Petitioner immediately moved to expunge the lis pendens. Petitioner contended that the action was one for damages and for rescission of the sale of the shares. The gist of petitioner's argument was that the corporation, not the shareholders, owns the real property. "Plaintiff, like any former Pacific Lumber shareholder, therefore has no direct interest in Pacific Lumber's property. If plaintiff could somehow prevail on his claims and obtain rescission of the merger and the return of Pacific Lumber shares to former shareholders, Pacific Lumber, not the shareholders, would still have title to, and the right of possession of, its real property and other assets. Plaintiff's claims thus do not affect an interest in Pacific Lumber's property."

Real party filed opposition to the motion to expunge and also filed a first amended complaint. The first amended complaint added to the introductory paragraphs the statement that plaintiff seeks a constructive trust on the real property and that plaintiff brings the action as a derivative action on behalf of PL-Maine.[1]

---

[1] In explanation, the first amended complaint adds the following paragraphs: "66. The imposition of a constructive trust on the real property presently held in the name of THE PACIFIC LUMBER COMPANY, a Delaware Corporation, is necessary and appropriate. [¶] 67. Defendants MAXXAM, PACIFIC LUMBER COMPANY, a Delaware Corporation, and CHARLES HURWITZ have dissipated the trust property, i.e., the real property in Humboldt County, title to which was formerly held by the PACIFIC LUMBER COMPANY, a Maine Corporation. [¶] 68. Since early 1986, defendants MAXXAM and HURWITZ and their affiliates and agents have received income and profits from the real property in excess of $100 million dollars and have used such monies for sundry other purposes, including the acquisition of KAISER-TECH, aka KAISER ALUMINUM, and the payment of exorbitant salaries and bonuses to HURWITZ and others. Defendants should be required to account fully for all profits and expenses. [¶] 69. By reason of the fraudulent manner in which defendants MAXXAM, HURWITZ, THE PACIFIC LUMBER COMPANY, a Delaware Corporation, and their affiliates and agents effectuated and obtained the transfer of legal title to the real property in Humboldt County formerly owned by THE PACIFIC LUMBER COMPANY, a Maine Corporation, said defendants are involuntary trustees holding said property and the profits therefrom in constructive trust for plaintiff and plaintiff's class with the duty to reconvey the same to plaintiff and plaintiff's class or to a new trustee appointed by the Court herein for plaintiff. [¶] 70. The MAXXAM defendants are not suitable to serve as the requested constructive trustee and the Court should appoint a new trustee to maintain and control the subject real property. [¶] 71. Plaintiff brings this action as a derivative action on behalf of THE PACIFIC LUMBER COMPANY, a Maine Corporation. Plaintiff did not make any effort to secure action from the old Board of Directors of THE PACIFIC LUMBER COMPANY, a Maine Corporation, since any such attempt and effort would have been futile in that the old Board of Directors, to plaintiff's information and belief, either no longer exists or is controlled by HURWITZ and the MAXXAM defendants. Plaintiff has, however, delivered a true copy of this First Amended Complaint to the law firm which formerly represented THE PACIFIC LUMBER COMPANY, a Maine Corporation, and which now represents the MAXXAM defendants, including THE

██ Respondent court denied the motion to expunge and petitioner filed this timely petition. (See Code Civ. Proc., § 409.4.)

Code of Civil Procedure section 409.1, provides in relevant part: "At any time after notice of pendency of an action has been recorded pursuant to Section 409 or other law, the court in which the action is pending shall, upon motion of a party to the action supported by affidavit, order that the notice be expunged, unless the party filing the notice shows to the satisfaction of the court, by a preponderance of the evidence, that: [¶] (a) The action does affect title to or right of possession of the real property described in the notice; and [¶] (b) Insofar as the action affects title to or right of possession of the real property described in the notice, the party recording the notice has commenced or prosecuted the action for a proper purpose and in good faith."

██ Initially, we agree with respondent court and real party that a party need not be seeking a personal interest in either the title to or right of possession of the real property in order to obtain a lis pendens. The language of Code of Civil Procedure section 409.1 is clear. The party filing the notice of lis pendens need only show that the action "affects" title to or right of possession of the real property, not that the party itself is seeking an interest in the title or possession. This distinction is consistent with the purpose of the lis pendens statute: "to furnish the most certain means of notifying all persons of the pendency of the action, and thereby warning them against attempting to acquire a legal or equitable interest in the property." (*Blackburn* v. *Bucksport etc. R. R. Co.* (1908) 7 Cal.App. 649, 653 [95 P. 668].)

██ To the extent that the action merely seeks a rescission of the acquisition of corporate shares, there is no dispute that the action does not affect title or possession of the real property owned by the corporation. ██ "It is fundamental that a shareholder owns no part of the specific property of the corporation." (*Potlatch Corp.* v. *Superior Court* (1984) 154 Cal.App.3d 1144, 1150 [201 Cal.Rptr. 750]; see 9 Witkin, Summary of Cal. Law (9th ed. 1989) Corporations, § 1, p. 511.) ██ If real party, and the class of former shareholders he purports to represent, could obtain the return of Pacific Lumber shares to former shareholders, the corporation, not the shareholders, would still have title to, and the right to possession of, the real property and other assets. Neither title nor possession would be directly affected.

Only if the transactions which resulted in PL-Delaware becoming the owner of the real property were unraveled to the extent that ownership of

---

the real property was again in PL-Maine would rescission affect title or the right to possession of the real property. Accomplishment of this change of ownership could only be through a derivative suit because the action would be to recover assets for the corporation and not for the shareholders as individuals. (See *Jones* v. *H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 106-107 [81 Cal.Rptr. 592, 460 P.2d 464]; see also *Mills* v. *Electric Auto-Lite Co.* (1970) 396 U.S. 375, 388 [24 L.Ed.2d 593, 604, 90 S.Ct. 616].)

■ "A shareholder's derivative suit seeks to recover for the benefit of the corporation and its whole body of shareholders when injury is caused to the corporation that may not otherwise be redressed because of failure of the corporation to act. Thus, 'the action is derivative, i.e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets.' [Citations.]" (*Jones* v. *H. F. Ahmanson & Co., supra,* 1 Cal.3d at p. 106.)

■ Real party, however, may not maintain a derivative suit because he cannot meet the requirements of stock ownership. California Corporations Code section 800, subdivision (b)(1), prohibits an individual from bringing a derivative action unless he was a shareholder both at the time he filed the derivative action and at the time of the transaction of which he complains. (*Gaillard* v. *Natomas Co.* (1985) 173 Cal.App.3d 410, 416 [219 Cal.Rptr. 74]; *Mueller* v. *MacBan* (1976) 62 Cal.App.3d 258, 269 [132 Cal.Rptr. 222]; *Stockton* v. *Ortiz* (1975) 47 Cal.App.3d 183, 195 [120 Cal.Rptr. 456].) Real party did not own any shares at the time of the transaction of which he complains and he has not owned shares at any time since. Rather, it was only after the transaction of which he complains that he purchased shares from Donald J. Schoenhofer, a former shareholder.

Real party seeks to avoid the implications of the corporate structure by suggesting that title to the real property can be affected through his attempts to impose a constructive trust on the property. In the case of *Coppinger* v. *Superior Court* (1982) 134 Cal.App.3d 883 [185 Cal.Rptr. 24], relied upon by respondent court, a lis pendens was permitted in a case seeking a constructive trust on real property. In *Coppinger*, the plaintiff purchased a house from the defendants allegedly as a result of misrepresentations regarding termite infestation. Plaintiff alleged that the proceeds of the sale were used to purchase a new residence and sought to impose a constructive trust upon the new residence. The reviewing court held that plaintiff had met his burden of showing that the action affected title to or possession of real property, reasoning: "Constructive trust is an equitable remedy to prevent unjust enrichment and enforce restitution, under which

one who wrongfully acquires property of another holds it involuntarily as a constructive trustee, and the trust extends to property acquired in exchange for that wrongfully taken. [Citations.] An action to impose a constructive trust on real property has been held to be an action for the recovery of real property within the meaning of Code of Civil Procedure section 318 prescribing a five-year statute of limitations. [Citation.] We are satisfied that an action to impose a constructive trust on real property is an action affecting title to or possession of real property." (*Id*. at p. 891.)

*Coppinger* has been severely limited, and its reasoning has been disapproved. (See *La Paglia* v. *Superior Court* (1989) 215 Cal.App.3d 1322 [264 Cal.Rptr. 63] and cases cited therein; but see *Okuda* v. *Superior Court* (1983) 144 Cal.App.3d 135, 141 [192 Cal.Rptr. 388].) We need not determine whether *Coppinger* survives because real party has failed to plead facts which, if proven, would support a constructive trust on the real property.

■ "[T]he constructive trust is a species of an involuntary trust which is created by operation of law. (Civ. Code, § 2217.) It is predicated upon section 2224, which provides that: 'One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.' The case law explains that in order to create a constructive trust as defined in section 2224, three conditions must be satisfied: the existence of a res (property or some interest in the property); the plaintiff's right to that res; and the defendant's acquisition of the res by some wrongful act. [Citations.]" (*Calistoga Civic Club* v. *City of Calistoga* (1983) 143 Cal.App.3d 111, 116 [191 Cal.Rptr. 571], fn. omitted.) Real party cannot satisfy either of the last two conditions.

■ The property which was allegedly acquired by fraud was the shares of stock of PL-Maine. Thus, when the complaint seeks a constructive trust on the shares of stock held by MAXXAM, it seeks a remedy consistent with the theory of constructive trust.[2] However, it is PL-Delaware which owns the real property; MAXXAM owns only the shares. Apparently in an effort to demonstrate that the real property, as distinguished from the shares of stock, was wrongfully acquired and that the wrongfully acquired property is owned by the wrongdoer, real party argues that the corporate veil should be pierced and MAXXAM found to be the owner of the real property. Real party cannot fit his action into a constructive trust theory by an allegation that MAXXAM is the alter ego of PL-Delaware. A constructive trust is a

---

[2] The prayer in the first amended complaint also includes a request for a constructive trust on all shares obtained by the MAXXAM defendants.

remedy not only to prevent unjust enrichment but also to enforce restitution. As explained above, the former shareholders of PL-Maine could not be entitled to restitution of the property, but only to restitution of the shares. Only by a derivative action could the property be returned to its prior owner, PL-Maine, and the requirements of a derivative action cannot be met. (See *Gorham* v. *Gilson* (1865) 28 Cal. 479, 484 [shareholders could not obtain constructive trust on property fraudulently transferred from corporation because shareholders never had title to the property].)

Real party argues that the plaintiff's right to the property is not a necessary requirement but that unconscionability or unjust enrichment alone will support a constructive trust. *Calistoga Civic Club* v. *City of Calistoga, supra*, 143 Cal.App.3d 111, is cited to illustrate this argument. In that case, a club misrepresented that it was using contributions to purchase and maintain a public library but the club sought to hold title to the building free of the right of the general public to assert a beneficial interest therein for library purposes. This court agreed that the club would be unjustly enriched if it were allowed to do so. We recognized that the normal constructive trust could not be possible because there was not an entity entitled to the property but approved the imposition of a charitable trust on the property, explaining at page 117: "As stated in 7 Witkin, Summary of California Law (8th ed.) Trusts, section 131, page 5487: 'A constructive trust is a *remedy* used by a court of equity to compel a person who has property to which he is not justly entitled to transfer it to the person entitled thereto. The trust is passive, the only duty being to convey the property.' Normally, the court would order the property conveyed to the person entitled thereto or grant the person an equitable lien on the property. As neither of these solutions would be practical, nor even possible in the present case, the trial court properly accomplished the desired result by the imposing of the charitable trust on the property."

*Calistoga Civic Club* did not ignore the condition that the plaintiff have a right to the real property but fashioned a remedy that would recognize that right. However, the shareholders of a corporation have no ownership right to the real property of the corporation but only a right to ownership of the shares. The constructive trust which would recognize that right is a constructive trust on the shares wrongfully acquired. The right to those shares carries an indirect right to exercise control of the real property through the voting rights of the shareholders. But that is too indirect an interest to support a lis pendens. Plaintiff must show an effect on the title or the right to possession in order to resist expungement of a lis pendens.

Let a peremptory writ issue directing respondent court to grant the motion to expunge the lis pendens.

Anderson, P. J., and Perley, J., concurred.