**FEDERAL TRADE COMMISSION,**
Plaintiff,

v.

**Mark R. CRITTENDEN,**
**et al., Defendants.**

No. CV 91–2019–JGD (Tx).

United States District Court,
C.D. California.

March 4, 1993.

James M. Spears, Marcy J.K. Tiffany, Marjorie Lakin Erickson, Linda M. Stock, F.T.C., Los Angeles, CA, for plaintiff.

Mark R. Crittenden, pro se.

## ORDER GRANTING RECEIVER'S PETITION FOR DISTRIBUTION, DENYING CREDITOR BERCUTT'S REQUEST FOR PAYMENT, AND DENYING DEFENDANT CRITTENDEN'S REQUESTS

DAVIES, District Judge.

On February 1, 1993, Permanent Receiver George E. Schulman's Petition for Instructions Re: Distribution to Creditors and Petition to Limit Notice ("Receiver's Petition"), Creditor Alan S. Bercutt's Request for Payment, and Defendant Mark R. Crittenden's Request for Rule 11 Sanctions came on for hearing before this Court. After reviewing the respective parties' moving papers and oral arguments, the Court HEREBY GRANTS the Receiver's Petition, and DENIES Alan S. Bercutt's and Mark R. Crittenden's requests in their entirety.

### FACTUAL BACKGROUND

Defendant Mark R. Crittenden's copier supply business, including Regional Supply Company, Regional Supply Center, Regional Copier Supply and United Supply Company were shut down and seized by the Federal Trade Commission ("FTC") pursuant to a temporary restraining order issued by this Court on April 15, 1991. The temporary restraining order froze the assets of Defendants Mark R. Crittenden ("Crittenden") and

Regional Supply Company, and placed the property and business of Regional Supply Company in the control of the Receiver, George E. Schulman ("Schulman"). On May 2, 1992 the Court issued an Injunction Order providing that the Receiver take custody, control, and possession of all funds, property, premises, mail, and other assets of all defendants, and conserve, hold, and manage all such assets. Order for Preliminary Injunction With Asset Freeze and Appointment of Permanent Receiver, 16–17 (May·2, 1991).

On June 28, 1991, Crittenden filed a voluntary bankruptcy petition. On July 18, 1991, the Court withdrew reference to the bankruptcy court pending resolution of matters outside the scope of the bankruptcy court's jurisdiction.

On July 28, 1992, the Court entered a Stipulated Final Judgment ("Judgment") with regard to the dispute between the FTC and Crittenden. At that time, the Court also renewed the reference to bankruptcy court for resolution of any remaining creditor disputes. The parties to the Judgment were Crittenden, the FTC, and Schulman. The Judgment directed the payment of funds held by Schulman as follows: (1) $150,000 is to be forwarded to the Internal Revenue Service ("IRS") and/or the Franchise Tax Board ("FTB") as requested by Crittenden and following notice to the parties and the creditors, Judgment, 20, ¶ XIII; (2) the funds remaining after the receiver's fees and expenses are to be distributed to Crittenden's customers under a consumer redress procedure proposed by the FTC, *id.* at 20–21, ¶ XIV; and (3) if distribution of any of the funds is impracticable, the undistributed funds are to be transferred to the U.S. Treasury upon motion and approval by the Court, *id.* at 21, ¶ XIV. The Judgment provided that Crittenden will have no right to object to the consumer redress plan or disposition of the funds. *Id.*

## DISCUSSION

Schulman petitions the Court under Local Rule 25.7(a) for an order instructing him on payment of dividends to creditors. Schulman proposes that the approximately $428,-521.53 on hand in the receivership estate of Crittenden be distributed as follows:

a) $150,000 to the IRS and/or the FTB pursuant to the Judgment, 20, ¶ XIII;

b) $28,000 for remaining administrative expenses; and

c) $250,000 (approximately) refunded proportionately to and among Crittenden's regional customers whose payments were received after creation of the receivership estate.

Schulman notes that distribution only to those customers whose payments were received after the Court created the receivership would be prudent. Schulman argues that the administrative costs of notifying all potential claimants would be prohibitive. As a result, he proposes following the Bankruptcy procedures concerning a constructive trust on money obtained by fraud. Receiver's Petition ("Petition"), 5.

Schulman proposes that any unclaimed funds will be paid to the United States Treasury and no payments will be made to any creditors other than those listed above. Finally, Schulman proposes serving his Report of Receiver only on the parties, any persons requesting notice, and the ten largest creditors including the tax authorities. He reasons that mailing notice to all possible creditors would be unduly costly and burdensome.

Crittenden opposes the Receiver's position, arguing that Schulman incorrectly proposes to treat the available funds as received through fraud. Crittenden states that he entered into the Judgment "without admission of liability." Crittenden Response, 3. Crittenden requests Rule 11 sanctions for Schulman's fraud allegations. Although Crittenden does not object to the $250,000 in consumer refunds, he objects to the allegedly high expenses of locating all potential creditors. He wishes to place the uncashed refunds in the United States Treasury on behalf of his debt to the IRS. Finally, he requests permission to pre-approve any letter submitted with the consumer refunds.

The IRS argues that the present matter is an interpleader action. On the merits, the IRS challenges the receiver's conclusion of fraud to give rise to a constructive trust.

The IRS further argues that Crittenden has committed an "act of bankruptcy" and, as a result, the IRS is entitled to first priority of receivership funds under 31 U.S.C. § 3713. Finally, the IRS argues that service of process was improper under 28 U.S.C. § 2410 and Federal Rules of Civil Procedure Rules 4(d)(4) and (5).

Alan S. Bercutt, C.P.A., opposes the Receiver's Petition and files a claim for payment from the Receivership Estate. Bercutt asserts that he performed tax accounting and bookkeeping services for the received parties during 1989 and 1990 for which he did not receive payment. The fees for these services total $26,420. Bercutt also disputes Schulman's "constructive trust" theory.

Plaintiff Federal Trade Commission ("FTC") filed a Statement of Non–Opposition to the Receiver's Petition. However, the FTC filed Replies to Crittenden's Opposition, the IRS' papers, and the papers of creditor Alan S. Bercutt. The FTC asserts that the funds belong to the customers under a constructive trust and thus may not be distributed to the IRS or to Bercutt.

### A. Receiver's Duties

Local Rule 25 authorizes the Court to appoint receivers. Permanent Receivers must file reports of the receipts and expenses of the receivership and of all acts and transactions performed in the receivership. Local Rule 25.6.1. Receivers must serve and file these reports every six months beginning within six months of their appointment. *Id.* Receivers must give notice by mail to all parties and to all known creditors when they petition for the payment of dividends to creditors, file and serve reports of the receiver, and file applications for instructions concerning administration of the estate. Local Rule 25.7(a)–(f).

A district court's power to supervise an equity receivership once the receivership is underway is extremely broad. *S.E.C. v. Hardy*, 803 F.2d 1034, 1037 (9th Cir.1986). The court has broad powers to determine the action to be taken in the administration of the receivership. *Id.* One of the primary purposes of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors. *Id.* at 1038. A district court has authority to use summary proceedings to determine appropriate relief in equity receiverships. *Id.* at 1040. Such summary procedures are appropriate so long as the creditors and potential creditors receive adequate notice and a reasonable opportunity to respond. *Id.*

### B. Service of Process

The IRS first challenges Schulman's petition based upon improper service of process. The IRS argues that Schulman is seeking interpleader because he seeks the distribution among competing claimants of funds to which the United States may claim a lien. IRS' Opposition, 2. The IRS asserts that Schulman has not followed the proper service rules for interpleader actions pursuant to 28 U.S.C. § 2410.

The instant action is not an interpleader action. An interpleader action pursuant to Federal Rule of Civil Procedure Rule 22 or 28 U.S.C. § 1335 is commenced by filing a complaint in interpleader. *See* Schwarzer, Tashima, & Wagstaffe, Federal Civil Procedure Before Trial, § 10:154 (1992). No such complaint has been filed in the instant matter, and thus no interpleader action has been commenced.

The IRS also contends that the Rule 4 service of process requirements have not been satisfied. *Id.* However, Rule 4(d)(5) requires only that the summons and complaint be served upon an officer or agency of the United States by sending a copy of the summons and complaint by registered or certified mail to such officer or agency. Fed. R.Civ.Pro. Rule 4(d)(5). In the instant matter, the fact that Schulman served the IRS by regular mail is irrelevant because he is not serving a summons and complaint, but rather a Local Rule 25.7(a) petition for payment of dividends. Because Schulman has satisfied Local Rule 25.7(a), service of the petition is proper.

### C. Constructive Trust

The threshold question in cases where the IRS asserts a tax lien is whether and to what

extent the taxpayer had any property or rights to property to which the tax lien could attach. *Aquilino v. United States*, 363 U.S. 509, 512, 80 S.Ct. 1277, 1279, 4 L.Ed.2d 1365 (1960); *see also* 26 U.S.C. § 6321. Schulman and the FTC assert that the funds in the receivership estate do not belong to Crittenden, but are held in a constructive trust for the benefit of Crittenden's customers. *See* FTC Reply, 2; Petition, 3. On their theory, the funds in the receivership estate do not belong to Crittenden, and thus the IRS' lien will not attach to the funds. Thus, the key issue presented is whether the receivership is properly regarded as a constructive trust.

A constructive trust is a remedy "flexibly fashioned in equity to provide relief where a balancing of interests in the context of a particular case seems to call for it." *In re North American Coin & Currency, Ltd.*, 767 F.2d 1573, 1575 (9th Cir.1985) *cert. denied*, 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986). A constructive trust is a creature of state law. *See id.* In a constructive trust, a person who has engaged in fraud or other wrongful conduct holds only bare legal title to the property subject to a duty to reconvey it to the rightful owner. *See In re Flight Transp. Corp. Securities Litigation*, 730 F.2d 1128, 1136 (8th Cir.1984) *cert. denied*, 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985). In bankruptcy matters, when the debtor's fraud or other wrongful conduct gives rise to a constructive trust under state law, the bankruptcy estate also holds the property subject to the constructive trust. *Id.* at 1136.

Since a constructive trust is a creature of state law, the Court must look to California law to determine whether a constructive trust exists over the present receivership estate. California law does not require fraud or intentional misrepresentation as a prerequisite to a constructive trust. *Calistoga Civic Club v. City of Calistoga*, 143 Cal.App.3d 111, 191 Cal.Rptr. 571, 576 (1983). Under California law, a court may find that a constructive trust exists if it finds merely that "the acquisition of property was wrongful and that the keeping of the property by the defendant would constitute unjust enrich-

ment." *Id.*, 191 Cal.Rptr. at 576 (citations omitted). The requirements for a constructive trust in California are: (1) the existence of a res; (2) the plaintiff's right to the res; and (3) the defendant's acquisition of the res by some wrongful act. *Id.*, 191 Cal.Rptr. at 575–576 (citations omitted).

Applying the three-part *Calistoga* test, the res in the instant matter is the money in the receivership estate. Second, Crittenden's customers have a right to the receivership funds because those customers purchased goods at inflated prices. Third, the funds were wrongfully obtained from the consumers. The Stipulated Final Judgment in this matter states that it is in "settlement of the Commission's claims for consumer redress" against Crittenden. Judgment, 19, ¶ XII. Such reference to consumer redress implies that the funds were wrongfully obtained. Moreover, the intent of the Judgment was to distribute the receivership funds to Crittenden's customers. Judgment, 19–20, ¶ XII–XIV.

Accordingly, the Court finds that a constructive trust was created over the funds in the receivership estate. Thus, the funds in the receivership estate belong to Crittenden's injured customers, and not to Crittenden.

The IRS argues that a constructive trust requires proof of fraud, citing *North American Coin, supra.* United States' Opposition, 10. However, in *North American Coin*, the Ninth Circuit applied Arizona law to determine whether to impose a constructive trust on funds obtained from customers of a precious metal supply business. *In re North American Coin & Currency, Ltd.*, 767 F.2d 1573, 1574 (9th Cir.1985). There, the court found that no constructive trust was present because no fraud was established as required under Arizona law. *Id.* at 1578. Thus, since constructive trusts are creatures of state law, *North American Coin* does not control the receivership estate in the instant matter, which is held in a constructive trust under California law.

In sum, pursuant to the Judgment, the Court orders the funds remaining in the receivership estate after the payment to the IRS and/or the FTB and payment of admin-

istrative expenses to be distributed to Crittenden's customers.

### D. United States' Statutory Priority

█ On or about January 16, 1992, the IRS filed with Schulman a proof of claim in the amount of $1,100,569.82 for federal income taxes owed by Crittenden for the 1986–89 tax years. The IRS asserts that its claim is entitled to first priority in the distribution of funds from the receivership under 31 U.S.C. § 3713. Section 3713(a) provides:

(1) A claim of the United States Government shall be paid first when—

(A) a person indebted to the Government is insolvent and—

(i) the debtor without enough property to pay all debts makes a voluntary assignment of property;

(ii) property of the debtor, if absent, is attached; or

(iii) an act of bankruptcy is committed; or

(B) the estate if a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor.

(2) This subsection does not apply to a case under Title 11.

31 U.S.C. § 3713(a). However, pursuant to 26 U.S.C. § 6321, the IRS tax lien only attaches to "property and rights to property" belonging to the person who failed to pay taxes. 26 U.S.C. § 6321. The Court need not determine whether the IRS is entitled to statutory priority over the receivership funds because those funds belong to Crittenden's customers under a constructive trust, not to Crittenden himself. Since the funds do not belong to Crittenden, the IRS lien does not attach to the receivership funds.

### E. Bercutt's Claims

█ Alan S. Bercutt claims that the Receiver should pay him $26,420 for tax preparation and bookkeeping services rendered to Crittenden. However, he cites no legal authority to support his claim to the receivership estate. Because the funds in the receivership estate belong to Crittenden's custom-

ers under a constructive trust, and not to Crittenden, the Court denies Bercutt's claim.

### F. Crittenden's Claims

The Court denies Crittenden's request for Rule 11 sanctions because Schulman has not alleged that Crittenden engaged in fraud. The Court also denies Crittenden's request to place funds in the United States Treasury on behalf of his tax debt because he cites no legal authority for the proposition that the funds should be placed there. Crittenden Response, 7. The Judgment merely states the remaining funds after an attempted distribution would be disgorged to the United States Treasury. Judgment, 21, ¶ XIV. The Judgment does not contemplate transfer of the funds to the United States Treasury on behalf of Crittenden's tax debt. Moreover, the Judgment provides that Crittenden "shall have no right to object to the consumer redress (consumer refund) procedure plan or disposition of the funds." *Id.* Finally, the Court denies Crittenden's request to preapprove a letter sent to customers because he similarly cites no authority for his position.

### G. Schulman's Request for Administrative Expenses

█ Schulman requests payment of his administrative expenses, totalling approximately $28,000, out of the receivership estate. Since Schulman collected the funds now present in the receivership estate, the Court finds that Schulman is entitled to recover his administrative expenses. Similarly, to reduce administrative costs, the Court grants Schulman's request to limit notice of the distribution of funds to the parties, the persons requesting notice, and the ten largest creditors.

### CONCLUSION

The Court finds that a constructive trust was created over the funds in the receivership estate. The IRS' tax lien does not have statutory priority over the funds in the receivership estate because those funds are not Crittenden's but rather belong to his injured customers. For these reasons, the Court HEREBY GRANTS the Permanent Receiver's Petition Re: Distribution and to Limit

Notice and ORDERS distribution of $150,000 to the IRS and/or the FTB pursuant to the Judgment ¶ XIII, approximately $28,000 to the Receiver for administrative expenses, and approximately $250,000 to the consumers. The Court HEREBY ORDERS that notice of the distribution be limited to the parties, those persons requesting notice, and the ten largest creditors. The Court HEREBY DENIES Alan S. Bercutt's Request for Payment and Mark R. Crittenden's requests in their entirety.

IT IS SO ORDERED.

### ORDER DENYING DEFENDANT MARK R. CRITTENDEN'S EX PARTE APPLICATION FOR STAY

On February 16, 1993, Defendant Mark R. Crittenden filed an Ex Parte Application for Interim Relief, Including a Stay of the 2/1/93 Granting (sic.) of the Receiver's Petition For Instructions Filed On or About December 29, 1992. The ex parte application requests a stay of an order that the Court has not yet issued. In addition, Defendant Crittenden has expressly waived his right to challenge the Receiver's plan for distribution of funds to consumers. *See* Stipulated Final Judgment and Order For Permanent Injunction With Respect to Defendant Mark R. Crittenden, 21:7-9. Accordingly, the Court hereby DENIES Defendant Crittenden's ex parte application for a stay.

IT IS SO ORDERED.