Filed 5/4/23  The 12 Tribes of Israel, U.S.A. v. Barnum CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE 12 TRIBES OF ISRAEL, U.S.A., INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> KATRINA BARNUM, <br><br> Defendant and Appellant. | B315528 <br><br> (Los Angeles County Super. Ct. No. BC574481) |

APPEAL from orders of the Superior Court of Los Angeles County, Elaine Lu, Judge.  Affirmed.

Kerendian & Associates, Shab Kerendian and Edrin Shamtob for Defendant and Appellant.

Westwood Lawyers and Lottie Cohen for Plaintiff and Respondent.

_____

Katrina Barnum appeals from orders that directed the sale of her ownership interest in two properties to satisfy a judgment against her. The only issue on appeal is whether the trial court correctly determined the priority between a recorded judgment lien and two recorded deeds of trust securing attorney fees Barnum allegedly incurred. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

A series of transactions leading back some 40 years affects our analysis of the present claims. This is the second appeal between the parties. The background information we describe is taken from the previous appellate opinion, *Twelve Tribes of Isr. v. Barnum* (Mar. 17, 2022, B299838) [nonpub. opn.] 2022 WL 804783 (*Tribe I*).

Respondent is The 12 Tribes of Israel, U.S.A., Inc. (the Tribe), a Los Angeles religious organization that appellant's husband, Wilhelm Grafrath, led for many years. In 1985, certain members of the similarly-named Twelve Tribes of Israel, U.S.A., Inc. of New York, moved to California and formed the Tribe in Los Angeles. Initially, the Tribe was an unincorporated religious organization, governed by the rules set up by its headquarters in New York. The Tribe formally incorporated in California in 1998. (*Tribe I, supra,* B299838 at p. *4.)

### 1. *The Highland Park Property*

In 1997, appellant's husband purchased on behalf of the Tribe real property in Highland Park as "a married man as his sole & separate property." Appellant quitclaimed any interest she had in the property to him. It was common for members of the Tribe to lend their credit in the acquisition of real property and hold the property in trust for the organization. Appellant's husband agreed to transfer the property to the Tribe after the

2

mortgage was fully paid. The Tribe paid the down payment, mortgage, taxes, insurance, repairs, and improvements to the property for the next 17 years. It used the property as its headquarters and place of worship. (*Tribe I, supra,* B299838 at pp. *4-*5.)

In 2006, appellant's husband was deported to Germany, following a felony conviction for child molestation. After his departure, the Tribe continued to use the property as its headquarters and to pay the related costs for it. In 2014, appellant quietly listed the property for sale, pursuant to a power of attorney executed by her husband. (*Tribe I, supra,* B299838 at p. *5.)

The Tribe filed suit against both appellant and her husband seeking to halt the sale on the grounds the Tribe had equitable rights to the property and/or the right to recoup the payments it had been making. Appellant accepted an offer on the property, but the pending lawsuit threatened to derail the closing. Appellant met with members of the Tribe and promised to transfer the net proceeds of the sale to the organization, in exchange for their dismissal of the pending lawsuit. The Tribe dismissed the lawsuit and escrow successfully closed on the property. Appellant paid none of the proceeds to the Tribe. (*Tribe I, supra,* B299838 at pp. *6-*7.)

After the sale proceeds were deposited into her and her husband's joint bank account, she paid from that account the delinquent property taxes on four properties she owned or partially owned with her brother, which we call the La Brea Avenue property, the Chesley Avenue property, the Long Street property and the San Gabriel property. Two of these properties—

3

San Gabriel and La Brea Avenue—were set to be sold in a tax auction within two weeks of her payment of the property taxes.

**2.      *The Judgment Establishing the Constructive Trust***

The Tribe first sought to reopen the lawsuit it had previously dismissed when appellant represented she would make payment of the monies due. When that was not successful, on March 15, 2015, the Tribe filed a new action against appellant for breach of contract and promissory fraud. The present appeal arises from this lawsuit. The case eventually proceeded to a bench trial, bifurcated for liability and punitive damages. In the liability phase, the trial court found in favor of the Tribe on both causes of action. The court awarded compensatory damages of $375,000 for each claim and imposed a constructive trust.

On January 25, 2019, the trial court (Hon. Holly E. Kendig) issued an interlocutory judgment in favor of the Tribe in the amount of $375,000 plus pre- and post-judgment interest. The court further ordered a constructive trust placed on appellant's joint bank account with her husband and over the four properties to which appellant had funneled proceeds of the sale of the Highland Park property. The interlocutory judgment included the following: "This judgment may be recorded with the Los Angeles County Recorder's Office to establish the constructive trust upon those four real properties in favor of Plaintiff, The 12 Tribes of Israel, U.S.A., Inc." On January 29, 2019, the Tribe recorded the January 25th interlocutory judgment with the Los Angeles County Recorder.

Sometime after the liability phase of the trial was completed, appellant retained Kerendian & Associates, Inc. to represent her in the punitive damages phase of the trial. Kerendian agreed to secure its fees through deeds of trust

4

executed by appellant against her interest in the same four properties identified in the interlocutory judgment. On February 8, 2019 (after the Tribe recorded the interlocutory judgment), Kerendian recorded a deed of trust for unspecified attorney fees on each of the four properties over which the trial court had imposed the constructive trust.

The court ultimately awarded the Tribe punitive damages in the amount of $180,000. On May 23, 2019, an amended judgment was entered in favor of the Tribe. On June 4, 2019, the Tribe recorded Judicial Council form EJ-001, a form abstract of judgment, with the Los Angeles County Recorder's Office. The abstract of judgment showed a total judgment of $724,520.51, reflecting compensatory damages plus punitive damages and interest to date. The abstract of judgment listed appellant's real property in the county but did not indicate that a constructive trust had been imposed on these properties.

Appellant appealed the May 23, 2019 judgment. In *Tribe I*, our colleagues in Division 4 affirmed the judgment as to the breach of contract cause of action, but reversed the promissory fraud claim finding it barred by the litigation privilege. (*Tribe I, supra,* B299838 at pp. *20–*22.) The appellate court also reversed the punitive damages award which had been based on the now reversed promissory fraud claim. (*Id.* at p. *30.) Although the appellate court referred to the constructive trust in its discussion of why it affirmed the breach of contract cause of action, the court did not expressly affirm or reverse the imposition of the trust. The appellate court did conclude its disposition of the appeal with: "The judgment is affirmed in all other respects." (*Id.* at p. *31.)

5

After the remittitur issued, the Tribe submitted to the trial court a proposed third amended judgment striking the promissory fraud and punitive damages awards to conform to the *Tribe I* remittitur. On July 29, 2022, the trial court signed the proposed third amended judgment. It declined appellant's request to strike the imposition of the constructive trust, finding it lacked jurisdiction to do so. " 'The trial court is empowered to act only in accordance with the direction of the reviewing court; action which does not conform to those directions is void.' " (*Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851, 859, quoting *Hampton v. Superior Court* (1952) 38 Cal.2d 652, 655.)

The trial court explained, "The Court of Appeal very clearly reversed only the promissory fraud claim and the award of punitive damages. The Court of Appeal has already affirmed the judgment 'in all other respects,' including the imposition of the constructive trust. [¶] Indeed, the Court of Appeal also expressly addressed an alternate basis to affirm the judgment, including the imposition of constructive trust: 'estoppel may be applied where necessary to prevent either unconscionable injury or unjust enrichment (*ibid*.) and justify the imposition of a constructive trust. (*Mazzera v. Wolf* (1947) 30 Cal.2d 531, 535.) In light of the trial court's findings on the issue of fraud, and imposition of a constructive trust to avoid unjust enrichment, we [the Court of Appeal in *Tribe* 1] find this doctrine to be an additional ground justifying affirmance of the trial court's finding in favor of the Tribe on its contract cause of action.' "

### 3. *The Tribe's Efforts to Enforce the Judgment*

While the *Tribe I* appeal was pending, the Tribe attempted to force the sale of appellant's partial interest in the La Brea and Chesley Avenue properties to satisfy the May 23, 2019 judgment

awarding punitive damages along with compensatory damages and creation of the constructive trust.[1] Appellant had not posted an undertaking in the *Tribe I* appeal, citing liquidity issues, and the judgment was not otherwise stayed.[2]

On December 10, 2020, the trial court issued a writ of execution directing enforcement of the May 23, 2019 judgment against appellant. A notice of levy was sent to appellant and the Tribe on January 12, 2021, as to the La Brea Avenue property and on January 22, 2021, as to the Chesley property.

On February 1, 2021, the Tribe filed an ex parte application pursuant to Code of Civil Procedure section 704.770 for an order to show cause why an order for sale should not issue. The Tribe noted in its ex parte application that the properties were encumbered by the following senior debt: the Chesley property had a mortgage of less than $30,000 and the La Brea property had outstanding property taxes in the approximate amount of $9,000 and a previous judgment lien of approximately $3,200. The Tribe asserted the deeds of trust in favor of law firm

---

[1] Appellant and her brother held title as "KATRINA M. BARNUM-GRAFRATH and LESLIE EDWIN BARNUM, tenants in common as their sole and separate property." Code of Civil Procedure section 704.820, subdivision (a) provides that "[a]t an execution sale of a dwelling, the interest of the judgment debtor in the dwelling and not the dwelling shall be sold" if the dwelling is owned by the judgment debtor as a tenant in common.

[2] Appellant filed a motion to stay enforcement of the judgment pending appeal or for waiver of the undertaking, which was to be heard with the Tribe's ex parte application for sale of the properties. The trial court's order on appellant's motion is not in the record but we assume the motion was denied because the court granted the application for sale of the properties.

Kerendian were junior to its judgment lien because the interlocutory judgment was recorded first in time. Appellant opposed the application, arguing, among other things, that her attorney's deeds of trust were superior and senior to the Tribe's judgment lien because they were recorded before the abstract of judgment had been recorded. Appellant's counsel disclosed that its fees, secured by the deeds of trust, totaled $332,000.

On May 24, 2021, the trial court (Hon. Elaine Lu) granted the Tribe's ex parte application and on May 25, 2021, issued an order for sale of appellant's ownership interest in the properties. In its ruling, the trial court found that the Tribe's judgment lien was superior to Kerendian's deeds of trust under California's race-notice statutes because the interlocutory judgment imposing the constructive trust was recorded on January 29, 2019, while Kerendian's deeds of trust were recorded 10 days later, on February 8, 2019. (Civil Code, § 1214, et seq.)

The court rejected appellant's argument that, pursuant to Code of Civil Procedure section 697.310, subdivision (a), the Tribe's judgment lien was not really a lien until the Tribe filed an abstract of judgment on June 4, 2019. The court concluded the requirement that an abstract of judgment be filed, rather than a certified copy of the judgment, only applied to money judgments. Because the judgment imposed a constructive trust, Civil Code sections 2223 and 2224 governed over Code of Civil Procedure section 697.310, subdivision (a).

Appellant timely appealed from the May 24, 2021 and May 25, 2021 orders.

8

# *DISCUSSION*

## 1. *Respondent's Motion to Dismiss Is Denied*

On January 3, 2023, after briefing in the present appeal was completed, the Tribe moved to dismiss the appeal, arguing it was moot because the writ of execution underlying the May 24 and May 25, 2021 orders had expired on December 9, 2022. Because appellant had not filed an undertaking in connection with the present appeal, the Tribe secured a new writ of execution on November 1, 2022, and filed it with the trial court on December 5, 2022. The Tribe also applied for new orders for sale of appellant's real properties in connection with the new writ of execution. On December 22, 2022, the trial court issued an order to show cause for the sale of real properties. Appellant opposed dismissal, arguing the trial court's order on the priority of liens remains in effect regardless of the expiration of the writ of execution and defeats mootness.

"As a rule, courts will generally exercise their discretion to review a moot case when 'the case presents an issue of broad public interest that is likely to recur,' 'when there may be a recurrence of the controversy between the parties,' or 'when a material question remains for the court's determination.' " (*In re D.P.* (2023) 14 Cal.5th 266, 282.) Here, the same controversy between the same parties is likely to recur with new writs of execution and orders for sale. Additionally, a resolution of lien priority now may impact future buyers and sellers. (*Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 88–89.) Whether or not the Tribe is successful in its attempts to sell appellant's interest in the properties, the issue of who will be paid first from the proceeds remains.

The motion to dismiss is denied.

9

### 2. *The Trial Court Properly Determined the Judgment Lien Was Senior to the Deeds of Trust*

The sole issue on appeal is whether the trial court correctly determined that the Tribe's judgment lien is senior to attorney Kerendian's deeds of trust. Appellant argues that only an "abstract of judgment," rather than a certified copy of the judgment, may create a cognizable lien pursuant to Code of Civil Procedure section 697.310 (CCP 697.310). The answer turns on the significance of the recording of the interlocutory judgment. For ease of reference, we recite a brief chronology of events related to the interlocutory and amended judgments, the abstract of judgment, and the post-judgment activities:

January 25, 2019: The trial court issues an interlocutory judgment creating a constructive trust over four properties partially or wholly owned by appellant.

January 29, 2019: The Tribe records the interlocutory judgment.

February 8, 2019: Kerendian records a deed of trust for each of the four properties identified in the interlocutory judgment as subject to the constructive trust.

May 23, 2019: The trial court enters an amended judgment that includes the punitive damages award in favor of the Tribe as well as the previously-awarded compensatory damages and the constructive trust.

10

June 4, 2019: The Tribe records an abstract of judgment reflecting compensatory damages plus punitive damages and interest to date. The abstract of judgment does not specify a constructive trust has been created.

Appellant urges us to ignore the January 29, 2019 recording of the certified copy of the interlocutory judgment awarding compensatory damages and establishing the constructive trust.[3] By appellant's calculation, Kerendian's deeds of trust, recorded on February 8, 2019, are senior by several months to the Tribe's abstract of judgment, recorded on June 4, 2019.

The Tribe relies on its January 29, 2019 recording of the interlocutory judgment, contending it created a valid encumbrance that is senior to the deeds of trust recorded 10 days later. This recording gave notice to Kerendian of the Tribe's prior interest in the La Brea and Chesley properties under applicable race-notice statutes. We agree.

---

[3] Appellant contends the holding in *Tribe I* eliminated the constructive trust because it was imposed as a remedy for the stricken promissory fraud claim. As we have observed, the trial court disagreed with appellant's interpretation of *Tribe I* on this point and declined to strike the constructive trust from the judgment. Appellant's appeal (case No. B322802) was dismissed on December 8, 2022, pursuant to California Rules of Court, rule 8.140(a) after she failed to designate the record or pay reporter fees. The judgment became final 30 days after the involuntary dismissal. (Cal. Rules of Court, rule 8.264(b)(1).) We have no appellate jurisdiction over that matter. (*Woodridge Escondido Property Owners Assn. v. Nielsen* (2005) 130 Cal.App.4th 559, 577.)

11

### a. Standard of Review

We review de novo the trial court's determination of priority between the Tribe's judgment lien and Kerendian's deeds of trust. This is a question of law. The pertinent facts are undisputed, and the question of priorities involves the application of statutes to undisputed facts. (*Lozada v. City and County of San Francisco* (2006) 145 Cal.App.4th 1139, 1148–1149 [application of statute to undisputed facts presents question of law subject to de novo review on appeal].)

### b. The Relevant Recording Statutes

The California real property recording system gives priority to the person whose instrument is first recorded, if that person is a bona fide purchaser or encumbrancer without notice of prior interests. Any subsequently recorded instrument is junior. (Civil Code, §§ 1107, 1213–1215.) Thus, the beneficiary of a deed of trust on property acquires his or her title or lien subject to all previous transfers of title and previously created liens and encumbrances of which he or she has actual or constructive knowledge. (Civil Code, §§ 1213, 1217.)

Government Code section 27201 requires the recorder to "upon payment of proper fees and taxes, accept for recordation any instrument, paper, or notice that is authorized or required by . . . court order to be recorded . . . if the instrument, paper, or notice contains sufficient information to be indexed as provided by statute, meets recording requirements of state statutes and local ordinances, and is photographically reproducible." Any written "instrument" (aside from a will) that affects the title to or possession of real property can be recorded if it otherwise conforms to the procedural requirements of the recording laws. (Civ. Code, § 1215.) An "instrument" is "a written paper signed

12

by a person or persons transferring the title to, or giving a lien on real property, or giving a right to a debt or duty." (Gov. Code, § 27279.)

Government Code section 27282, subdivision (a)(1) specifically permits "a *judgment* affecting the title to or possession of real property, authenticated by the certificate of the clerk of the court in which the judgment was rendered" to be recorded "without acknowledgment, certificate of acknowledgement, or further proof." (Italics added.) Government Code section 27326 likewise requires a county recorder to file and record "certified copies of final judgments or decrees partitioning or affecting the title or possession of real property, any part of which is situated in his [or her] county. From the time of filing with the recorder for record, the certified copy of the judgment or decree imparts notice to all persons of its contents, and any subsequent purchaser, mortgagee, and lienholder purchases and takes with the same notice and effect as if the copy of the decree were a duly recorded deed, grant, or transfer."

The Enforcement of Judgments Law (Code Civ. Proc., § 680.010, et seq.) sets out the procedural requirements for the enforcement of money judgments and nonmoney judgments. " 'Money judgment' means that part of a judgment that requires the payment of money." (Code Civ. Proc., § 680.270.) Nonmoney judgments include judgments for possession or sale of real or personal property. (Code Civ. Proc., § 712.010, et seq.) CCP 697.310, relating to money judgments only, provides: "Except as otherwise provided by statute, a judgment lien on real property is created under this section by recording an abstract of a money judgment with the county recorder."

13

By contrast, when a money judgment is included in a judgment for possession or sale of real property, Code of Civil Procedure section 712.040 governs enforcement of the money and nonmoney portions of the judgment. It provides: "A writ of possession or sale may be enforced as a writ of execution to satisfy any money judgment included in the judgment for possession or sale."[4] (Code Civ. Proc., § 712,040, subd. (a).)

### c.    Analysis

Appellant relies on CCP 697.310 and *Behniwal v. Mix* (2007) 147 Cal.App.4th 621 (*Behniwal*) to argue that only an abstract of judgment, not a certified copy of a judgment, may create a lien sufficient to provide notice under the recording statutes. According to appellant, the recording of the interlocutory judgment on January 29, 2019 had no legal force or effect because it is not an abstract of judgment. Not so.

The judgment recorded by the Tribe on January 29, 2019 was not solely a money judgment subject to CCP 697.310. It included both a money judgment in the form of compensatory damages and a nonmoney judgment in the form of the creation of a constructive trust on the properties.[5] Neither CCP 697.310 nor

---

[4]    "[T]he procedural requirements for issuance of [writs of possession or sale] are substantially the same as for writs of execution [relating to money judgments]." (Ahart, Cal. Practice Guide: Enforcing Judgments & Debts (The Rutter Group 2022) ¶ 6:311, citing Code of Civ. Proc. §§ 712.010, 712.020 and *In re Coy* (C.D.Cal. 2016) 552 B.R. 199, 204.)

[5]    "A constructive trust is a remedy used by a court of equity to compel a person who has property to which he or she is not justly entitled to transfer it to the person entitled to it. The trust is passive, the only duty being to convey the property." (13 Witkin, Summary of Cal. Law (11th ed. 2022) Trusts, § 357;

14

*Beniwal* limit the recording of documents in this setting to an abstract of judgment. By its express language, CCP 697.310 is limited to money judgments and does not apply to these circumstances. *Behniwal,* relying on CCP 697.310, is inapposite. It addressed only whether a trial court's attorney fees order (i.e., a money judgment) was superior to all pre-existing liens on certain real property.[6] *Behniwal* held that it was not. (*Behniwal, supra,* 147 Cal.App.4th at p. 636.)

Code of Civil Procedure section 712.040, subdivision (a), sets out a separate, yet substantially similar, process by which a party may enforce a money judgment that is included in a judgment for possession or sale of real property. Code of Civil Procedure section 712.040 does not require an abstract of judgment to be filed. Instead, the Government Code requires the county recorder to accept for recordation any instrument authorized by court order to be recorded (Gov. Code, § 27201) and additionally permits the county recorder to record "a judgment affecting the title to" real property (Gov. Code, § 27282). The interlocutory judgment itself expressly authorizes the recording of the interlocutory judgment, per the Government Code.[7] Given

---

*Pac. Lumber Co. v. Superior Court* (1990) 226 Cal.App.3d 371, 377; *Calistoga Civic Club v. City of Calistoga* (1983) 143 Cal.App.3d 111, 116–117.)

[6] An attorney fees order constitutes a money judgment. (*Felczer v. Apple Inc.* (2021) 63 Cal.App.5th 406, 416.)

[7] The interlocutory judgment states:
"It is further ordered that a constructive trust in the amount of the Judgment is imposed upon Katrina Barnum's [also known as Katrina Barnum Grafrath] interests in the following

the clear language of the recording statutes, the judgment recorded on January 29, 2019 created a valid encumbrance on the La Brea and Chesley properties that provided notice and was senior to Kerendian's deeds of trust.

### *DISPOSITION*

The challenged orders are affirmed. Respondent to recover its costs on appeal.

RUBIN, P. J.

WE CONCUR:

BAKER, J.                                                        MOOR, J.

---

four legally described real properties until this Judgment is paid, or until further court order:

    A. 815 La Brea Avenue, Inglewood, CA 90302
    APN: 4016-006-001
    Lot#421 Tract 216, Map MB10- Page 21, Inglewood, California

    B. 2222 Del Mar Avenue, Rosemead, CA 91770
    APN: 5277-021-002
    Lot #2, Tract 11133, Block B, Rosemead, CA 91770

    C. 5727 Chesley Avenue, Los Angeles, CA 90043
    APN: 5007-022-006
    Lot #67 4, Tract 911, Los Angeles, CA 90043

    D. 1008 Long Street, Inglewood, CA 90302
    APN: 4013-003-007
    Lot #183, Tract 4476, Inglewood, CA 90302

This Judgment may be recorded with the Los Angeles County Recorder's Office to establish the constructive trust upon those four real properties in favor of Plaintiff, The 12 Tribes of Israel, U.S.A., Inc."

16